Good morning, Your Honors. I'm Michael Drake from the Federal Public Defender's Office here on behalf of the appellant, Rick Hitsman. I'm going to try to reserve at least three minutes for rebuttal and I'll watch the clock on that. And I wanted to talk about sufficiency unless the Court preferred to start somewhere else. There are two ways this Court can rule in favor of Mr. Hitsman on his sufficiency claim. There's an easy way and a somewhat less easy way. I'm going to focus on the easy way, which is to rule that the government completely failed to prove that the pills that were sold as alleged in each of the counts in the indictment were actually counterfeit by AGRA. How can we do that given Defense Counsel's repeated statements taking that issue off the table? Aren't those judicial admissions? No, Your Honor. I mean, there are two things. The statements that Defense Counsel made before the close of evidence were about his anticipation of what the government's evidence would show. And his statements after the close of evidence don't matter because by that time the failure proof was complete. No rational juror could have found anything different. After listening to a lawyer tell them more than once the pills were counterfeit, they couldn't have found the pills counterfeit? Well, they couldn't in any case have found the pills were counterfeit because there was a complete failure of proof on the point, Your Honor. There was no evidence before them. Right? So, I mean, the government tried... Do you have any authorities for the proposition where Defendant's Counsel acknowledges the truth of an allegation and then later secures an order of... an insufficiency of the evidence reversal because of the absence of proof on the very thing Defense Counsel has acknowledged? I don't... I mean, we don't have anything in the briefing on that. I hadn't seen anything in the briefing. And doesn't it seem kind of contrary to common sense? Well, I think if you look at the case law and judicial admissions, I don't think you'll find a case where Defense Counsel made concessions where there was a total failure of proof that were held against counsel. Usually when you look at the judicial admissions cases, it's about... I mean, I think... Benson in particular, USV Benson, the tax return case. Oh, no, I'm not familiar with... Is Benson the one that was discussed in the FDIC case? James, I think, is the case, United States v. James, which is about the insurance element in bank robbery. Benson is tax returns. Closing argument, Defense Counsel says that his client did not contend that he had filed his tax returns, construed as a binding admission. Yes, right. So in USV versus James, I don't have the site, but it's a 19... I think it's a 1993 case, and I can get that for you in a 28-J letter if you want. But they... I think Benson is distinguished in that case where James is about where there was... Defense Counsel and the government had... were going to read a stipulation into the record, and then the government forgot. And so there were lots of this kind of... We're not going to whether the bank was insured, statements like that from Defense Counsel. Those weren't admissions in that case because there was a total failure of proof. I think if you look at Benson, it's going to turn, and I would have to read Benson again, too, Your Honor, but my recollection is that Benson... There wasn't a complete failure of proof on the element as there is in this case. So how can there be a complete failure here? Even if there's a weak chain of custody, that goes to wait. Right. The argument is that there is no chain of custody. I mean, Solario, the case that the government discusses, I mean, you're talking... You have testimony about who seized the drugs and who witnessed the seizure and who transported the drugs and where they were held and where they were transported from, dates of seizure, locations of seizure, right? Not to say that all of those facts matter, but one of them does, and here there are none, literally none. The government tried to prove that the pills were a counterfeit through the testimony of the Pfizer chemist, right? But there's nothing in her testimony that provides evidence that those pills had anything to do with the pills that Mr. Hitzman sold. There's no locations of seizure, names of seizure, no mention of the case agent's name, no mention of the field number, nothing. But she does reference this case. Well, every case is going to reference this case, but the fact that the government had this witness testify in this case about those results isn't any kind of evidence about the pills that are at issue in this case. Why not? It is evidence. She says that they came from this case. Now, she may not have offered much to back that up, but she said that. Why isn't that evidence? It's evidence subject to attack, but it's evidence. I think that the generic statement, like generic references to this case, I mean, every witness who testifies in a case testifies to this case. That says nothing about what the evidence that you're testifying about. Testimony itself is evidence. You can challenge the evidence, but it is evidence. So how do you say complete absence of evidence? That's evidence. It's a complete absence of relevant evidence. Well, it's surely relevant. It's about this case. It may not be, in your mind, probative. It's certainly not compelling, but it's evidence, isn't it? It's testimony offered during the trial. It's certainly evidence offered during the testimony at trial, but the question is what in the testimony makes it evidence? Every statement by a witness at a trial will be about this case. Exactly. Your attack is on the strength of the evidence. You're saying that she wasn't capable of making the connection, but those are things that defense counsel could have attacked during trial, and instead, defense counsel is busy telling the jury the pills are counterfeit. That's not what we're focused on. Well, okay, that's a strategic choice. You've got to make strategic choices, but I don't see how you can say that is not evidence, when in fact I think it is. By definition, it has to be evidence, doesn't it? It's evidence, and the question is whether it's relevant evidence. No, that's not relevance. It's surely relevant. The question is whether it's sufficient. Your attack is on sufficiency. You're not saying it's irrelevant because she said it was about Jones' case. It's about Hitzman's case. Your Honor, the Jackson inquiry is about the sufficiency of relevant evidence. So, right, the threshold question is, is the evidence relevant? And on its face, what's not relevant about it? Because there's no connection to the case. Uh-uh. You're saying it's not probative. You're not saying it's not relevant. She says these are from this case. What's irrelevant about that? What's irrelevant about it is that there are five samples that she doesn't identify as anything about that has any connection to the pills. I don't want to talk up in terminology, but that's not relevance. That's sufficiency. It may be that I can't. So what's insufficient about it? I mean, I think I've said what's insufficient about it. I mean, I don't have anything else to say except for that. Just to clarify one somewhat different point. It is the case that during closing, the court allowed the jury to view the two sets of pills in a vial, correct? So the jury got to actually see counterfeit and allegedly counterfeit authentic pills. I don't believe so, Your Honor. I don't believe that they were ever shown pills physically during deliberations. They were given a photograph, right? That was exhibit 90. Right. That's a separate question. Yeah. Right. All right. So, I mean, I would just urge the court to consider Solario, right? I mean, that was a sufficiency claim, and right, you can frame that as a chain of custody issue, and it was framed in that case as a chain of custody issue. But if Solario means anything, it means that you have to have some of those points, and then I would urge you to compare. And if the court would like, I could provide a 28-J briefing on Benson and the difference between Benson and James, where you have statements by a defense counsel that could be interpreted as concessions. But I think if you look at Benson, I don't think that, and if you look at James, I don't think this case compares. I don't think what you have are actual admissions that can be held against defense counsel, because by the time he made something that you could fairly construe as an admission, by that point, what I call a failure of proof was complete. And that's what I came to talk about. I do have a few more questions. On the hearsay statements, aren't they only relevant if used to show Hitzman was accurately stating his belief? Yes, yes. Certainly, you have to believe that you have to take his statement as reflecting his accurate belief. And I think that's why... Why? He's making a sales pitch. Well, okay, so there's two things... He's not caught in an unguarded moment. He's trying to sell product to somebody. So why do we have to take that as being a reflection of his honest belief? Well, you wouldn't have to take it as a reflection of his honest belief in general. I mean, the 803... So considering it under 8033, the inquiry there isn't whether it strikes you as honest or credible or whatever. The question there is whether it meets the three Faust factors, whether it was contemporaneous, whether there was a chance for reflection. So I think chance for reflection is where you might say, well, he had a chance for reflection because it's a sales pitch. The problem though, is that it's difficult to, maybe impossible to view this as a sales pitch in this context. Because if you are selling pills and your buyer is saying, yeah, I want the super strong stuff, the stuff that's stronger than the real stuff. And you're telling the buyer that, well, what you have is just exactly the same as what you get when you buy it over the counter. That's a very weird kind of sales pitch. You're telling the buyer you don't have the super strong stuff. What you have isn't stronger than the real stuff. It's the real stuff. So I don't think the sales pitch theory works. I don't think that's a coherent way to reject that. Is there a difference between the statement about testing? Is that in the category by itself? I tested the pills by sight, taste and effect and the other pills. Yeah, I do. I do. I think if statements when he says directly, I think it's, I mean, he never, I don't think we have any statements where he just says flat out, I believe these are real Viagra. He says, makes statements that reflect that belief. Those are probably the most where you have to make the largest inference. Yes. Statements where I sat down, I put them side by side, I cut them up, I tasted them. Those are statements of memory to prove his belief that the pills were actually real Viagra. On the comparison photograph, just so I'm clear, the district court clearly took the objection as a concern about the fidelity of the photograph, the accuracy. She said, I mean, the quote is in the briefing, but something like, you know, defense makes a legitimate point because if you take photographs, they can make things look different than they really look. I think all that was required, not much was required, nothing exotic was required, simply a question by the government counsel to that, to the effect that, you know, is this a true and accurate photograph of the, of the pills? The government knew how to ask that question when it wanted to, it asked that question of the, of the chemical analyst during, during direct examination. So that's all that would have been required. And because just to get back to your question, the district court clearly took defense counsel's concerns about the accuracy of the photograph and the ability to compare the pills with what would be the only physical evidence to go back to the jury on that, on that issue. Go to save the remaining time. Yes. Yes, Your Honor. Thank you. You may. Good morning, Your Honors. Diana Clark, may it please the court, Diana Clark for the United States. To address the sufficiency of the evidence question that defendant has raised in his briefs, I'd like to start by pointing out, as the court is well aware, that the question of whether or not the defendant's pills were counterfeit was certainly not at issue at all during the trial. Oh, was it something that the government had to prove? It certainly was something that the government had the burden of proving. Unfortunately, the chain of custody evidence wasn't as strong as it ideally should have been. However, it's very clear from the record that defense counsel conceded that the pills in this case were in fact counterfeit. During the opening, he says that the reason we're here is because what I don't expect to see is any evidence that Mr. Hitzman himself actually knew that this was counterfeit. Thus, directing the jury to the question of whether defendant actually knew as opposed to whether the pills were in fact counterfeit. And in closing, at ER 574, defense counsel expressly says, was it a counterfeit mark? Yes. They have given us two chemists to tell us it was a counterfeit mark. So, Your Honors, the question of whether or not the pills were in fact counterfeit was not at issue during this trial. The government, yes, it did have the burden of proving that they were in fact counterfeit. But we would submit, Your Honors, that in this case, on this appeal, all evidence presented at trial must be viewed in the light most favorable to the government. And yes, the chain of custody evidence was weak. However, we had the case agent testifying on the stand that for each undercover buy, he submitted one box as a sample to Pfizer for testing to ensure that those pills were in fact counterfeit. The chemist from Pfizer, Ms. Callahan, then also testified that she received five samples in this case and she tested each of them and they were each counterfeit. In addition to that, you have the testimony of Ms. Callahan lined up with the testimony of Brian Donnelly, also from Pfizer, both of whom testify that the pills were distinguishable in the very same ways from the authentic Viagra pills that were presented or admitted into evidence by Mr. Donnelly. That is, they were larger, they were darker, and they all varied in the same ways. So we would submit, Your Honors, that the chain of custody evidence, although weak, was sufficient to allow the jurors to infer that the pills that Ms. Callahan testified to were in fact the counterfeit pills that the defendant sold in this case. I would like to now address the hearsay statements that defendant sought to admit at trial, unless Your Honors have any further questions regarding the sufficiency of the evidence questions. Defendant, we would submit, is taking an unduly narrow view of the rule against hearsay here. If you look at each of the five statements that defendant sought to admit at trial, each of those statements consist largely of a presentation by the defendant that the pills that he sold, as far as he could see, he kept them open, he tasted them, and they looked like authentic Viagra pills to him, they tasted like authentic Viagra pills to him. Those statements have no probative value unless they're taken as true. So we would submit that those are in fact the statements of the salesman, a salesman who's trying to sell a counterfeit product as a real product, as a genuine authentic Viagra product. So are you conceding that that set of statements is distinguished from the others? I'm sorry? That they came out the back door of the Pfizer factory, that the other set of statements, so even accepting what you've just said is true, aren't those statements that I tested the pills different from the pills came out the back door of the Pfizer factory, recent news reports are false, pharmaceutical companies lie to protect their profits. Would you agree that that's a separate category of statement? I am not. I am looking at each of the five statements that were, that defendant sought to admit at trial, your honor, and I believe that your honor is referring to statement number four, um, but in that statement defendant says some stuff Pfizer says it's counterfeit, I don't think so. And that is classic hearsay, your honor. It is his statement of belief to prove his actual belief. So your honor, I would characterize statement number four as distinguishable from the others, because statement one, as your honors know from the, from the papers, the government actually introduced in its entirety. Statement number three, half of that statement, the government also introduced in its entirety, statements two and five, your honors, we would submit, say pretty much the same thing as statements one and three, that is the stuff works for me as well as anything I've ever gotten up of counter. Um, and you know, I think that why they're calling it knockoff is because they want to implant in the community's mind that they shouldn't buy it. I hope that answers your question regarding what's our characterization of these statements. I confess it took me a moment to find the list of which one was which. So I didn't stay up with you. Let me ask you about, I think what you called statement number four, which is the back door of the factory statement. And isn't there a difference between offering that statement to prove that in the back door and offering it to say that defendant thought that they were authentic because that's how they've been acquired. It surely couldn't prove the first, but arguably can help demonstrate his belief that the bills were not counterfeit because he thought they'd been acquired by somebody getting them out of the factory. They could be used for that purpose, but we would submit that again, the issue is that unless those statements are taken as true, they have no probative value. No, I think that's, let's focus on that. Suppose he's just dead wrong. They didn't come out of the back door. The pills are counterfeit, but if he thought they were authentic, he thought they were made by Pfizer and that some employee had smuggled them out. It won't prove the first, but it could prove the second. That is his belief in whether they were counterfeit. So I don't think you have to accept them based on the testing argument. I understand that, but this one, I don't think so. I don't think this one is aimed at going to proving that the pills actually came through the back door. It's offered up to try to prove that defendant thought they had gone through the back door and hence thought they were not counterfeit. Shouldn't that have been admitted? Your Honor, in this case, we would submit that defendant really, while this statement says, let's face it, Pfizer is not making it here, period. It's just coming out of the factory out the back door and Pfizer can't control it. One, it's not entirely clear that this statement relates to the pills that defendant was selling, because if you look at the beginning of that statement, he says, you know, some stuff Pfizer says it's counterfeit, but I don't think so. The some stuff that Pfizer says is counterfeit, it's not entirely clear actually whether the defendant was talking about his own merchandise. Wasn't included on relevance grounds, though, was it? It was excluded on hearsay grounds. That is correct. And while I do believe that Your Honor has a point as to what he would be seeking to prove with this particular statement, even if it had been admitted, we think, Your Honor, that the evidence in this case was so substantial that it was harmless error to exclude it. So I don't make you concede error on that subject. Tell us why it's harmless. Your Honor, looking through the record, this case involved hours of recordings, both audio and video of the defendant trying to sell his product to our undercover. And he knew that his product was counterfeit, and that is proven in a number of different ways. One, he was selling a lot of packages, what he characterized as a lot of packages at a very low price. The record shows that he knew exactly how his prices compared to the prices of Authentic Viagra. He knew that he was selling his pills for $3.74 each, whereas at the Kaiser Pharmacy, Viagra costs $17 each. He said that there was no difference between the pills. There is no reason to compare two items that you honestly believe to be the same unless you think that there are differences between them. Why take a bottle of aspirin and cut open every single pill and taste every single pill if you didn't think that they were the same product? Well, he's not the one that got him through the back door. Maybe that's his way of checking out his source to make sure he's getting what he thinks he's buying. Potentially. But the evidence here also shows that the defendant expressed a fear of both law enforcement and a fear of FISA investigators. The recordings show that this defendant is constantly asking the undercover agent whether he was law enforcement, whether he was a FISA investigator. And there are statements from the defendant saying that he was laying low, taking a break due to some attention from law enforcement. It was law enforcement attention to counterfeit products and sale of those products. He talks about a 60-minute special. He talks about a dateline special. And those shows were specifically directed at counterfeit goods. And then the defendant goes ahead and says that he talked to his attorney and his attorney said that, trust me, if they want to talk to you, you're the last one on their list. And that conversation took place right after the dateline special about the counterfeit goods. In addition, the defendant says to our undercover agent that FISA sees millions of dollars they're not getting because these countries, other countries can break it down and remanufacture it. The breakdown of a product and its remanufacturing simply isn't relevant if defendant in fact thought that these pills were coming out the back door of a FISA factory. So we would submit that the evidence in this case was strong enough to support the government's view that the defendant... You need more than that. I mean, this isn't a sufficiency of the evidence challenge on this element. This is the admissibility of evidence. And if evidence that should have been admitted was not, the question is what's the impact? So the question isn't quite the same as was the evidence sufficient to support the government's case. The question is, can we be confident that the exclusion of evidence that perhaps should have come in didn't have an impact? Correct, your honor. And I do apologize I did misspeak, but we do believe that the error here was harmless given the amount of evidence that the government put on showing that the defendant did in fact know what he was selling and that was counterfeit goods. I'd like to ask about the Batson issue. Yes, your honor. Do you ultimately concede that given the trial court submission of any explanation for its decision at the third step means it's de novo review here? We would submit that it should be a plain error review because under Chanko, there was no record laid by the defendant as far as his objection to the government counsel's explanation of why we struck that juror. How do you reconcile Chanko with Alanis? In Alanis, your honor, there was no other plausible reading of the record except that the government's explanation was pretextual. Chanko, on the other hand, provides that unless the defense counsel makes a record because the government otherwise could have had the opportunity to explain itself that the review should be plain error. But Alanis did impose on the trial court an obligation to complete the three-step process and make a deliberate decision, articulated deliberate decision. That is correct, your honor. However, we would submit that the very distinguishing characteristic between Alanis and Chanko is that the only plausible reading of the record in Alanis was that the government's explanation was pretextual. And where there's any sort of ambiguity, Chanko provides that there should be some record laid by the defense counsel as far as why the government's explanation was insufficient or why the trial court's procedures were insufficient. In the briefing on appeal, the government focuses on new explanations, post hoc explanations for the exercise of the strike. This court can't look at those. The court is restricted to the record made at trial, correct? Correct, your honor. But I do believe that the further explanations proffered by the government give some context to the challenge itself so that this court may see that the only plausible reading of the record was not that the government's explanation was pretextual. I believe I am almost out of time, so unless your honors have any further questions, I will be adding to that. Thank you. Thank you. Mr. Drake. Your honors, four quick points. First, on the sufficiency issue, the government says that the chain of custody evidence wasn't strong, as strong as it should have been, it was weak. It was non-existent. The question for this court is what that means in the context of a Jackson claim. On the hearsay issue, there are two points on that. First, statements of belief to prove a belief are fine. That is a legitimate use of statements of belief under 8033, and that's clear under Wagner. So I just wanted to make that point. Do you refer there to the testing statements, for example? I mean, the testing statements make sense only if, in fact, he did the test. Right, right. And to the extent there is any concern about what the government calls merger, I just want to make it clear that it doesn't matter under 8033, because he could say, I think these are real, via Wagner, I think these are the real thing. That could be considered under 8033, flat out. That's a statement of belief to prove the belief, and that is fine under 8033. I think the federal practice procedure citation we have, 7044, has the example of, I think my breaks are bad. State of mind is, I think my breaks are bad, and that's a legitimate use of that statement under 8033. And then the second point under the hearsay was the government's arguments about, there's lots of pills, they're cheap, etc. We addressed it in the opening brief, we addressed it in the reply brief. Those are consistent with selling gray market goods, and for that reason, the government's arguments fail under Blanco and Silverman, because they have to, the evidence has to be sufficient to prove the precise knowledge, the consciousness of guilt of the professor. How about his discussion about they can take them apart in India and put them back together and make it look like the same thing? Well, the government said it's irrelevant. Ms. Kwok meant something else, but I think that's really true. It is irrelevant. I mean, talking about, right, if he's selling gray market Viagra, then the fact that there are investigations, DEA investigations into Viagra is going to affect someone who's selling gray market Viagra. So his concern about the origins of that investigative activity just doesn't say anything about what his state of mind was. I'll let you say the fourth, go ahead. We'll let you on that last. Okay. Well, here's just a quick Batson question. Looking at the record there, the prosecutor indicated, I think, incorrectly, technically, that Donna H. indicated she was emotionally affected, but she did request a sidebar. Can't that be reasonably construed as some signal of discomfort or emotion, not wishing to discuss the matter in front of the others? Sure, sure. A person reading the transcript could infer that her emotion was the concern, but if she didn't state it as a concern, it wasn't actually her concern. And I think more importantly under this court sitting on bunk and Kessler said that just general concerns about a juror's emotions aren't even enough to pass muster under step two. So even if the court were to construe the government's reasons in that way, it wouldn't help the government on that. Now, what's the fourth thing you wanted to say? That was the fourth. Oh, that was it. Whoa. Yes. Are we a full service court or what? You're completely gentlemanly. Oh, yeah. I just, I think that's fine. Thank you, Your Honor. We thank you. We thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Mueller, Fernandez, Clifton